**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| MEDLINE INDUSTRIES, INC., an Illinois corporation, | Civil Action No. 1:11-cv-08666 |
| Plaintiff, | |
| v. | |
| RAM MEDICAL, INC., a New Jersey corporation, | MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PURSUANT TO F.R.C.P. 12(b)(6) |
| Defendant. | |

## MEMORANDUM IN SUPPORT OF DEFENDANT RAM MEDICAL'S 12(b)(6) MOTION TO DISMISS PLAINTIFF'S COMPLAINT

NOW COMES Defendant Ram Medical, Inc. ("Ram Medical"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and respectfully submits this Memorandum of Law in Support of Its Motion to Dismiss Plaintiff's Complaint. In support of its motion Defendant states as follows:

## BACKGROUND

Defendant Ram Medical is an intermediary distributor of medical products throughout certain areas of the United States, including Illinois. Plaintiff Medline Industries, Inc. ("Medline") alleges Medline is both a manufacturer and a distributor of medical products, but also purchases medical products from manufacturers and intermediary suppliers as part of its business. (See Compl. #1.) Ram Medical's involvement with Medline consisted of supplying synthetic mesh used in surgical applications. Ram Medical did not manufacture, design, or alter

the mesh it supplied to Medline. Plaintiff alleges that it was understood that C.R. Bard, Inc. ("Bard") was the manufacturer of the surgical mesh ("Bard mesh") at issue. (See Compl. #7.)

The Complaint alleges orders for the Bard mesh were accomplished via purchase order form from Medline to Ram Medical. (See Compl. Exhibit A.) Ram Medical would receive the order form via fax from Medline and fill the order. The basic, single-page order form included a description of the product ordered, the unit, quantity of units ordered, price per unit and net value. The order form also included the phrases that stated "This purchase order is subject to Medline's Standard Terms and Conditions… Agreement previously executed by you, our vendor." (Compl. Exhibit A.) Plaintiff's Complaint never alleges that Ram Medical executed the "Agreement" referenced in the purchase order. Instead, Medline alleges Ram Medical "never sought" to review Medline's Terms and Conditions ("Terms and Conditions"). (See Compl. #11.) The Complaint also does not allege Ram Medical was provided a copy of these Terms and Conditions. Exhibit "B" attached to Plaintiff's Complaint purportedly shows a copy of these Terms and Conditions not signed by either party. (See Compl. Exhibit B.)

There are various underlying actions filed against Medline and Ram Medical which allege personal injuries as a result of surgical implantation of the allegedly counterfeit Bard mesh pending in multiple state and federal jurisdictions. (See Compl. #12-17.) Both Ram and Medline are actively defending these actions. (See Compl. #13-17.) There has been no final adjudication of these actions. (See Compl. #18.) Plaintiff's Complaint seeks damages in this lawsuit amounting to defense costs incurred in defending these underlying suits, as well as unspecified amounts allegedly paid or to be paid in settlements or judgments. (See Compl. #18; Prayer for Relief p.9.) Plaintiff asserts five counts against Ram Medical, including claims based on Contractual Indemnity, Common-Law Indemnity, Breach of Express Warranty, Breach of

Implied Warranty of Fitness for a Particular Purpose, and Breach of Implied Warranty of Merchantability. Defendant now moves to dismiss Plaintiff's Complaint in its entirety.

## ARGUMENT

Defendant Ram Medical respectfully moves this Court to dismiss Plaintiff's Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Medline's claim for damages is entirely speculative and premature in that it is purportedly based upon unspecified costs and fees supposedly incurred for defending personal injury lawsuits actively pending in multiple jurisdictions, and for sums either paid or to be paid in settlements or judgments that may or may not occur. Because there has been no final adjudication of these underlying lawsuits, Defendant Ram Medical respectfully moves this Court to dismiss Plaintiff's complaint in its entirety because it is premature and does not meet the requirements for "ripeness" under Illinois law.

Additionally, Defendant Ram Medical requests the Court dismiss Counts I, II, and III for the following additional reasons:

Count I (Contractual Indemnity) of the Complaint should be dismissed because Plaintiff did not plead sufficient facts to establish a contract for indemnity existed between Medline and Ram Medical at the time of the transactions.

Count II (Common Law Implied Indemnity) should be dismissed because Plaintiff's did not plead sufficient facts to sustain a claim for Common Law (Implied) Indemnity under Illinois law.

Count III (Breach of Express Warranty) should be dismissed because Plaintiff did not plead sufficient facts to show that Ram Medical made an affirmative statement of fact or promise about the goods.

### A.    Motion to Dismiss Standard

In deciding a motion to dismiss brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a Court will accept all well-pleaded facts as true and will draw all reasonable inferences in favor of the Plaintiff.  See Hernandez v. City of Goshen, 324 F.3d 535, 537 (7th Cir. 2003); Forseth v. Vill. of Sussex, 199 F.3d 363, 368 (7th Cir. 2000).  "Only a complaint that states a plausible claim for relief survives a motion to dismiss".  Ashcroft v. Iqbal, 556 U.S. 662 (U.S. 2009).  Courts "are not bound to accept as true a legal conclusion couched as a factual allegation".  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (U.S. 2007).

The complaint must also contain enough facts to raise a right to relief above the speculative level.  Id.; Srivastava v. Daniels, 409 Fed. Appx. 953, 955 (7th Cir. 2011)(stating a complaint must plead enough facts to state a claim to relief that is plausible on its face).

### B.    Medline's Complaint against Ram Medical is Premature and does not meet the Illinois Test for Ripeness

Defendant moves to dismiss all five counts of Plaintiff's complaint because it is premature and does not meet the requirements for "ripeness" under Illinois law.  In Illinois, the basic rationale of the ripeness doctrine is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in … disagreements … until … a decision has been formalized…"  Morr-Fitz, Inc. v. Blagojevich, 231 Ill. 2d 474, 490 (2008).  Morr-Fitz, Inc., 231 Ill. 2d at 490 (citing Abbott Laboratories, 387 U.S. at 149, 18 L. Ed. 2d at 691, 87 S. Ct. at 1515). Whether an action is considered "premature" or "unripe" for adjudication focuses on an evaluation of the fitness of the issue for judicial decision at that point in time. Certain Underwriters at Lloyd's v. Boeing Co., 385 Ill. App. 3d 23, 41 (Ill. App. Ct. 1st Dist. 2008).

The Illinois Supreme Court adopted the two prong test for ripeness provided by the U.S. Supreme Court in Abbott Labs. v. Gardner, 387 U.S. 136 (U.S. 1967) which provides; (1) courts address whether the issues are fit for judicial decision; and (2) courts consider any hardship to the parties that would result from withholding judicial consideration. Morr-Fitz, Inc., 231 Ill. 2d at 490. This principle was further applied in Weber v St. Paul Fire & Marine Insurance Co., 251 Ill. App. 3d 371, 372 (1993), where the Illinois appellate court held plaintiff's request for indemnity was premature, because the … action brought to determine a carrier's duty to indemnify was brought prior to a determination of its insured's liability in the underlying lawsuits and was not ripe. Weber, 251 Ill. App. 3d at 373-74, citing Bituminous Casualty Corp., 212 Ill. App. 3d at 561(emphasis added).  Indeed, the Weber court concluded that the issue of whether or not there is a duty to indemnify does not arise until an insured becomes legally obligated to pay damages in the underlying action." Weber, 251 Ill. App. 3d at 373 (emphasis added).

Similarly, Plaintiff Medline here has expressly pleaded that both Medline and Ram Medical are currently defendants in various law suits ("underlying actions") in multiple state and federal jurisdictions nationwide.  (See. Compl. #12-17.)  These underlying actions allege personal injuries by third parties as a result of surgical implantation of the allegedly counterfeit Bard mesh. Id.  Both Ram and Medline are actively defending these actions (there has been no final adjudication). (See Compl. #13-18.)  Indeed, the Plaintiff's entire complaint is based on the pendency of these counterfeit Bard mesh lawsuits (and potential future ones).  The Plaintiff seeks amounts it has paid its defense thus far, and defense and indemnity costs it will pay in the future. (See Compl.#18; Prayer for Relief p.9.)   Medline is asking the Court to decide damages prematurely, because the amount of indemnification cannot possibly be decided before it is

determined what liability, if any, will be allocated to Defendant Ram Medical or Medline, in the underlying actions and any actions filed in the future.

Applying the two part test for Ripeness under Morr-Fitz, Inc, delineated above, Plaintiff's entire complaint should be dismissed. Under the first prong, the Court cannot conclusively decide whether Plaintiff's claims here are meritorious or what the damages are because the underlying actions are still active and have not been adjudicated. Under the second prong, Plaintiff has not pled any allegations regarding its hardship. Plaintiff's only statement discussing the financial outlay was: "it has expended large sums to defend the pending actions". Compl. #18. In Morr-Fitz, the plaintiff asserted significant daily financial loss to its detriment. Morr-Fitz, Inc. 231 Ill. 2d at 494. The Plaintiff has not pleaded any facts to that effect here and it is likely that Plaintiff's liability insurance carriers have been funding the defense of Plaintiff in the underlying actions.

For the above reasons, Defendant respectfully requests that the Court dismiss the entire complaint because it is premature and does not meet the requirements under the Ripeness doctrine under Illinois law.

## C.     **Plaintiff fails to state a claim for Contractual Indemnity**

Defendant provides the Court the following additional basis to dismiss Count I of Plaintiff's Complaint based upon Contractual Indemnity.

Contractual indemnification arises where there is a specific contractual agreement between the parties that creates an obligation to indemnify. Westinghouse Electric v. LaSalle Monroe, 395 Ill. 429, 433-434 (1946). The terms of the contract of indemnity will govern the right to recovery. Jackson v. Illinois Central Gulf R. Co. 18 Ill. App. 3d 680, 690 (1st Dist. 1974). While the course of conduct may act as consent to an unsigned contract, the course of

conduct must be clear as to what contract the conduct relates. <u>Melvin v. State</u>, 41 Ill. Ct. Cl. 88, 98 (Ill. Ct. Cl. 1989). U.C.C. § 2-105 states that if an express agreement and course of dealing cannot be reasonably construed as consistent, then the express terms control over the course of dealing. 810 Ill. Comp. Stat. 5/1- 205(4); <u>Echo, Inc. v. Whitson Co.</u>, 121 F.3d 1099, 1102 (7th Cir. Ill. 1997). If the writings between parties do not establish the existence of a contract, the terms of the particular contract consist of those terms on which the writings of the parties agree and the rest via gap fillers. <u>See</u> 810 Ill. Comp. Stat. 5/2- 207.

Here, Plaintiff's contractual indemnity claim rests entirely upon purported indemnification language contained in a contract Medline cannot even allege was received or reviewed by Ram Medical. Medline never states that Ram Medical was provided or received a copy of this document containing the indemnity language, or that Ram ever reviewed the language. (<u>See generally</u> Compl.) Instead, in the background section of Medline's complaint, it is simply alleged that Defendant Ram "never sought to review Medline's Standard Terms and Conditions". (Compl. #11.) Indeed, the attached Exhibit "B" to the complaint is an <u>unsigned</u> copy of these Terms and Conditions.

Thus, Medline's charges to support a contractual indemnity claim amount to allegations that Ram Medical filled orders pursuant to the terms of a form single page purchase order provided by Medline. (<u>See</u> Compl. #9,11; Exhibit A.) This form did not contain the indemnification language upon which Medline relies. (Compl. Exhibit A.) Instead, the form purchase order in lower case type stated: "This purchase order is subject to Medline's Standard Terms and Conditions. Agreement previously executed by you, our vendor". (Compl. #10.) Aside from being grammatically confusing, these phrases as pleaded in the complaint cannot be true because Medline is apparently conceding that Ram Medical never reviewed these Terms and

Conditions and thus never executed the agreement. Clearly, if Ram had agreed to the Terms and Conditions, or executed an agreement to that effect, Medline would have included those facts in its complaint. There simply was no such an agreement, and thus no promises to indemnify were made or breached by Ram Medical.

Applying the Twombly and Iqbal standards, a complaint must contain enough facts to arise above the speculative level and the allegations must be plausible on its face to survive a 12(b)(6) motion. Because Medline's complaint seeks to enforce terms of indemnification language to which it apparently concedes Ram Medical never saw, signed or agreed, Medline's claim for Contractual Indemnification is deficient and must be dismissed.

Furthermore, the course of dealing between Plaintiff and Defendant alleged was limited to filling orders via the single page purchase order form. At no point was conduct alleged by Defendant that amounted to Defendant's consent to the terms of the indemnification language.

Wherefore, Defendant respectfully asks this court to dismiss Plaintiff's Contractual Indemnification claim (Count I) for this additional basis.

**D.** **Plaintiff fails to state a claim for Common Law "Implied" Indemnity**

Defendant provides the Court the following additional basis to dismiss Plaintiff's common law indemnification claim stated in Count II of the Complaint.

The Illinois Supreme Court has stated that the Contribution Act did not completely abolish common law implied indemnity if the party's liability to the plaintiff is based solely upon vicarious liability or the other pre-tort relationships. American Nat'l Bank & Trust v. Columbus-Cuneo-Cabrini Med. Ctr., 609 N.E.2d 285, 287-88 (Ill. 1992)(emphasis added). The implied doctrine of indemnity operates when the burden of liability is shifted from a blameless tortfeasor to a blameworthy one. Wilder Corp. of Del. v. Thompson Drainage & Levee Dist., 658 F.3d 802,

803 (7th Cir. Ill. 2011); HK Systems, Inc. v. Eaton Corp., 553 F.3d 1086 (7th Cir. 2009). Said yet another way, Illinois courts recognize that the law may impose upon a blameless party liability derivatively through another's conduct. Frazer v. A.F. Munsterman, Inc., 527 N.E.2d 1248, 1251-52 (Ill. 1988); Schulson v. D'Ancona & Pflaum LLC, 821 N.E.2d 643, 647 (Ill. App. 2004).

Illinois law is clear that to state a cause of action for implied indemnity based upon quasi-contractual principles, a complaint must allege (1) a pre-tort relationship between the plaintiff and defendant, and (2) a qualitative distinction between the conduct of the plaintiff and the defendant. Kerschner v. Weiss & Co., 282 Ill. App. 3d 497, 503-504 (Ill. App. Ct. 1st Dist. 1996); Frazer v. A.F. Munsterman, Inc., 123 Ill. 2d 245, 255 (1988); Van Slambrouck v. Economy Baler Co., 105 Ill. 2d 462, 475 (1985). Pre-tort relationships which have given rise to a duty to indemnity include lessor and lessee, employer and employee, owner and his lessee, and master and servant. A buyer-seller relationship is not a sufficient pre-tort relationship to support a traditional indemnity claim. Jethroe v. Koehring Co., 603 F. Supp. 1200, 1204 (S.D. Ill. 1985).

Here, Plaintiff Medline unequivocally states that both Plaintiff and Defendant are distributors of medical products. (See Compl. #1-2.) Distributors, by definition, are not manufacturers but wholesalers or middleman (resellers) of products they obtain from other upstream distributors and/or manufacturers. Thus, the relationship between Plaintiff and Defendant is strictly a distributor purchaser relationship. (Compl. #25.) In fact, both Medline and Ram Medical were "pass-through distributors", a relationship insufficient to trigger any special duty on the part of Ram Medical. Since there is no allegation that Defendant was involved in the type of pretort relationship that gives rise to common law indemnity such as owner-lessee or employer-employee, this count should be dismissed.

Furthermore, the complaint fails to plead a qualitative distinction between the Defendant's conduct and the Plaintiff's conduct regarding the Bard mesh. Defendant Ram Medical is stated to be a distributor of medical products throughout much of the United States. (See Compl. #2.) Plaintiff states that it was aware that Defendant was a mere supplier of products manufactured by companies other than Defendant, including the Bard mesh. (Compl. #7.) Similarly, Plaintiff Medline also admits that it is a nationwide distributor (reseller) of medical products and that it too resold the Bard mesh it obtained from Defendant. (See Compl. #1, #12.) Plaintiff, therefore, has not pled enough facts to establish a qualitative distinction between Plaintiff's and Defendant's conduct with regards to the Bard mesh. It also has not pled enough facts to show a shift in liability from a blameless tortfeasor to a blameworthy one and thus its Common Law Indemnification claim fails. Therefore, Defendant Ram Medical respectfully asks this Court to dismiss Plaintiff's Common Law Indemnification claim (Count II) on this additional basis.

**E.** **Plaintiff fails to state a claim for Breach of Express Warranty**

Defendant provides the Court the following additional basis to dismiss Plaintiff's Breach of Express Warranty claim (Count III).

Under Illinois law, Express Warranties are governed by § 810 ILCS 5/2-313 which provides:

> *(a)* *Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.*

> *(b)* *Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.*

> (c)     Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.
>
> (2)     It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty.

The statute clearly explains there must be <u>affirmative</u> conduct by the seller (in one of three ways: by promise, description or sample) in order to form an express warranty. 810 ILCS 5/2-313 (Emphasis added). Case law also is clear on this requirement: "To state an express warranty claim, a plaintiff must allege the product failed to conform with an affirmative statement of fact or promise …." <u>Hasek v. DaimlerChrysler Corp.</u>, 745 N.E.2d 627, 634 (Ill. App. 2001). For a claim to be actionable under the theory of express warranty it must be based on an affirmation of fact or promise. <u>See</u> <u>Weiss v. Rockwell Mfg. Co.</u>, 9 Ill. App. 3d 906, 914 (Ill. App. Ct. 1st Dist. 1973).  Additionally, in order for statements by a seller to constitute an express warranty, they must become part of the benefit of the bargain. <u>Wheeler v. Sunbelt Tool Co.</u>, 181 Ill.App.3d 1088 (4th Dist. 1989).

In support of its claim for Breach of Express Warranty, the Plaintiff simply references two bases:  (1) the existence of paragraph 7 of Medline's Standard Terms and Conditions, which, as already discussed, is a document that was supposedly created by Medline that Medline itself does not contend was reviewed or executed by Defendant Ram Medical. (<u>See</u> Compl. #31, #11); and (2) the fact that Ram filled orders placed by Medline for the Bard mesh pursuant to the single page order forms.(Compl. #32.)   These bases are insufficient to establish a claim for breach of Express Warranty.

As noted above, the case law and the corresponding statute are clear with respect to the requirements for Breach of Express Warranty. A plaintiff must allege the product failed to conform with an <u>affirmative statement</u> of fact or promise, description or sample provided by Defendant. Here, however, Plaintiff makes no allegations that Ram ever made such an affirmative statement, provided a description, or provided a sample of the Bard mesh as required to sustain a claim for Express Warranty.

Wherefore, Defendant respectfully moves this Court to dismiss Plaintiff's Breach of Express Warranty Claim (Count III) for this additional basis.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendant Ram Medical, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, respectfully requests this Court to grant its Motion to Dismiss Plaintiff's Complaint in its entirety.


Dated: February 2, 2012

Respectfully submitted,


/s/D. Patterson Gloor, Esq.
D. Patterson Gloor. Esq.
ARDC # 6192017
Donald F. Ivansek, Esq.
ARDC # 6204340
Phillip Nava, Esq.,
ARDC No. 6304955
Gloor Law Group, LLC
225 W Wacker Dr. Suite 1800
Chicago, IL 60606

Attorneys for Defendant
RAM MEDICAL, INC.

6858207