# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **MEDLINE INDUSTRIES, INC.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | No. 11 C 8666 |
| v. ) | |
| ) | Judge Joan H. Lefkow |
| **RAM MEDICAL, INC.,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |
| ) | |

## OPINION AND ORDER

Plaintiff Medline Industries, Inc. ("Medline") filed a six-count complaint[1] against Defendant Ram Medical, Inc. ("Ram") asserting claims for breach of an indemnity agreement (Count I), breach of the common law duty to indemnify (Count II), breach of express warranty (Count III), breach of warranty of fitness for a particular purpose (Count IV), breach of implied warranty of merchantability (Count V), and breach of promise to insure (Count VI).[2] Medline's claims arise out of a contract between Medline and Ram for the purchase and sale of medical products. Before the court are Ram's motions to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons below, Ram's motions [#19, 33] are granted in part and denied in part.

---

[1] Medline's original complaint asserts counts I through V. After obtaining leave of court, Medline filed an amendment to the complaint that asserts an additional claim, Count VI, for breach of promise to insure. For simplicity, the court refers to the original complaint and the amendment to the complaint together as "the complaint."

[2] Medline is an Illinois corporation with its principal place of business in Illinois. Ram is a New Jersey corporation with its principal place of business in New Jersey. The court has subject matter jurisdiction pursuant to 28 U.S.C § 1332 because the parties are completely diverse and the amount in controversy exceeds $75,000. Venue is proper under 28 U.S.C § 1391(b)(2) because a substantial part of the events that gave rise to Medline's claims occurred within this district.

## BACKGROUND[3]

Ram is a supplier of medical products and Medline is a manufacturer and distributor of medical products. Ram approached Medline about becoming one of its suppliers and provided Medline with a copy of its "Quality Control Processes and Procedures" to assure Medline that Ram's products were of the quality required by Medline. As a condition to becoming one of Medline's suppliers, Ram also agreed to add Medline to its liability insurance policies covering the sale of products. Relying on Ram's representations, Medline accepted Ram as a supplier.

One of the medical products supplied by Ram was mesh manufactured by C.R. Bard, Inc., for use in surgical applications ("Bard mesh"). Medline placed its first order for Bard mesh on December 4, 2008 and continued purchasing Bard mesh from Ram until sometime in 2009. Medline ordered each shipment of Bard mesh using its standard purchase order. The purchase order is a one-page form that specifies the goods and quantity ordered, price per unit and net price, and delivery address. (Compl. Ex. A). The purchase order also includes the following disclaimer:

> IMPORTANT: CONFIRMATION OF THIS PURCHASE ORDER IS REQUIRED. P.O. PRICE BINDING. USE MEDLINE PO# ON ALL INVOICES.
> This purchase order is subject to Medline's Standard Terms and Conditions. Agreement previously executed by you, our vendor.

(*Id.*)

Medline's standard terms and conditions are contained in a separate document that is not attached to the purchase order. They include the following indemnity and warranty provisions:

> 4. Seller warrants and agrees that it has complied with all applicable State, Federal, and local laws and governmental rules and regulations with respect to this

---
[3] Unless otherwise noted, the facts recounted in this section are taken from the complaint and are presumed true for purpose of resolving the pending motions.

order and also agrees to indemnify Medline, its successors, assigns, and customers, and users of the goods, from all costs and damages, whether direct or indirect, arising from patent infringements, property damage, personal injury or death arising out of the purchase and/or use of goods, materials or services.

…

7. Seller expressly warrants that the goods are merchantable within the meaning of the laws (Uniform Commercial Code and applicable State and Federal laws) in effect on the date of the purchase order. In addition to all warranties which may be prescribed by law, the goods shall conform to specifications, drawings, and other descriptions and shall be free from defects in materials and workmanship. Seller also warrants that to the extent the goods are not manufactured pursuant to detailed designs furnished by Buyer, that such goods will be free from defects in design. Such warranties, including warranties prescribed by law, shall run to Buyer, its customers, and to users of the goods, for a period of one (1) year after delivery unless otherwise stated.

…

23. Seller shall defend, indemnify and hold harmless Medline against any and all losses, costs, legal fees, judgments, settlements, and other liabilities of any kind, arising out of any claim of personal injury, injury to property or infringement relating to the use of products provided to Medline by the Seller.

(Compl. Ex. B). The terms and conditions further provide that they are "an integral part" of all Medline purchase orders and that, together with any purchase order, they constitute the entire agreement between the parties. (*Id.* ¶¶ 18–19.) There is also an Illinois choice of law provision. (*Id.* ¶ 19.) At the bottom of the terms and conditions, there is a signature and date line for the seller's representative.

Medline does not allege that Ram received a copy of its standard terms and conditions. The example document that is attached to Medline's complaint is unsigned and undated and does not contain any reference to Ram or Bard mesh. (*See id.*)

In late January 2010, Bard informed Medline that some of the mesh that Medline had purchased from Ram was counterfeit. By June 2010, Ram had recalled all of surgical mesh that it sold to Medline as genuine Bard mesh. Ram stated that the recall was necessary because the

3

FDA had issued a notice indicating that the mesh had not been manufactured by Bard. Medline, however, had already resold much of the mesh that it purchased from Ram. The mesh was then used in surgeries. As of December 2012, when Medline filed its complaint in this action, Medline was the defendant in two class action lawsuits and two individual actions that are based on allegations of physical injury to patients who were implanted with allegedly counterfeit Bard mesh sold by Ram. Counsel for one of the individual plaintiffs has advised Medline that he may file up to fifteen additional suits on the same grounds. Medline has expended large sums of money to defend itself in the pending actions and anticipates that some suits will result in the entry of adverse judgments against it. Medline has demanded that Ram defend it in the personal injury actions, and Ram has refused. Ram has not added Medline to its liability insurance policies.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges a complaint for failure to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6); *Gen. Elec. Capital Corp.* v. *Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). In ruling on a 12(b)(6) motion, the court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Dixon* v. *Page*, 291 F.3d 485, 486 (7th Cir. 2002). In order to survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of the claim's basis, but must also establish that the requested relief is plausible on its face. *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl.* v. *Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). At the same time, the plaintiff need not plead legal theories. *Hatmaker* v. *Mem'l Med. Ctr.*, 619 F.3d 741, 743 (7th Cir. 2010). Rather, it is the facts that count.

**DISCUSSION**

Ram first argues that Medline's complaint must be dismissed because Medline's claims are not ripe for adjudication. In the alternative, Ram argues that Medline's claims for contractual indemnity, common law indemnity, breach of express warranty, and breach of promise to insure must be dismissed for failure to state a claim.

**I.  Ripeness[4]**

Ripeness "is a doctrine of justiciability 'invoked to determine whether a dispute has matured to a point that warrants decision.'" *Giger* v. *Ahmann*, No. 09 CV 4060, 2010 WL 2491025, at *3 (N.D. Ill. June 15, 2010) (quoting 13B Charles Alan Wright et al., *Federal Practice & Procedure: Civil* § 2532 (3d ed. 2008)). Other principles included within the justiciability doctrines include the prohibition against advisory opinions, standing, mootness, and the political question doctrine. *Allen* v. *Wright*, 468 U.S. 737, 750, 104 S. Ct. 3315, 82 L. Ed. 2d 556 (1984). "Inquiries into ripeness generally address two factors: first, whether the relevant issues are sufficiently focused so as to permit judicial resolution without further factual development; and, second, whether the parties would suffer any hardship by the postponement of judicial action." *Triple G Landfills, Inc.* v. *Bd. of Comm'rs of Fountain Cnty., Ind.*, 977 F.2d 287, 288–89 (7th Cir. 1992) (citing *Abbott Labs.* v. *Gardner*, 387 U.S. 136, 149, 87 S. Ct. 1507, 18 L. Ed. 2d 681 (1967); *Gen. Fin. Corp.* v. *FTC*, 700 F.2d 366, 371 (7th Cir. 1983)).

---

[4] Some authority suggests that ripeness is a jurisdictional issue that should be addressed in a motion to dismiss under Rule 12(b)(1). *See* 15-101 James Wm. Moore et al., *Moore's Fed. Practice: Civil* § 101.73; *LaSalle Bank* v. *City of Oakbrook Terrace*, No. 05 C 3191, 2006 WL 59497, at *1 n.2 (N.D. Ill. Jan. 9, 2006); *Union Tank Car Co.* v. *Aerojet-General Corp.*, No. 05 C 2095, 2005 WL 2405802, at *2 (N.D. Ill. Sept. 27, 2005). The Seventh Circuit, however, has made clear that ripeness concerns the "appropriate exercise of discretion rather than the limits of judicial power" and that when a suit is not ripe it should be dismissed in the exercise of the court's discretion rather than for lack of jurisdiction. *Brandt* v. *Vill. of Winnetka*, 612 F.3d 647, 649–51 (7th Cir. 2010); *see also Meridian Sec. Ins. Co.* v. *Sadowski*, 441 F.3d 536, 538 (7th Cir. 2006) ("[R]ipeness is peculiarly a question of timing rather than a limit on subject-matter jurisdiction." (citation and quotations omitted)).

At the outset, the court notes that the parties rely heavily on Illinois declaratory judgment cases from the insurance context. *See Certain Underwriters at Lloyd's, London* v. *Boeing Co.*, 895 N.E.2d 940, 385 Ill. App. 3d 23, 324 Ill. Dec. 225 (2008); *Weber* v. *St. Paul Fire & Marine Ins. Co.*, 622 N.E.2d 66, 251 Ill. App. 3d 371, 190 Ill. Dec. 656 (1993); *Bituminous Cas. Corp.* v. *Fulkerson*, 571 N.E.2d 256, 212 Ill. App. 3d 556, 156 Ill. Dec. 669 (1991). These cases are of limited relevance. First, the court determines whether Medline's claims are ripe by looking to the approach taken by federal, not state, courts. While it is true that federal courts sitting in diversity apply the substantive law of the state in which they sit, *RLI Ins. Co.* v. *Conseco, Inc.*, 543 F.3d 384, 390 (7th Cir. 2008), whether a dispute has reached a stage where it is ripe for adjudication is a question of federal practice. *Lear Corp.* v. *Johnson Elec. Holdings Ltd.*, 353 F.3d 580, 583 (7th Cir. 2003) ("Delaware courts postpone adjudication about indemnity until there is a judgment against the party seeking it. That Delaware defers this kind of adjudication is not conclusive on a federal tribunal; perhaps Delaware requires more by way of ripeness than do federal courts." (quotations and citation omitted)). Second, Medline's complaint is not styled as request for a declaratory judgment. Declaratory judgment actions often involve issues of judicial discretion that simply are not applicable here. Third, Medline's claims do not arise out of an insurance contract. Instead, they relate to a contract for the sale of goods which is governed by Article 2 of the Illinois Uniform Commercial Code ("UCC"). *See* 810 Ill. Comp. Stat. 5/2-101 to 5/2-328.[5]

---

[5] The fact that Medline alleges that the purchase orders incorporated an indemnity provision does not render the UCC inapplicable. Because the predominant purpose of the agreement between Medline and Ram plainly relates to the sale of goods, the UCC applies to all of Medline's claims regarding the purchase orders, including the claim for breach of contractual indemnity. *See Midwest Mfg. Holding, LLC* v. *Donnelly Corp.*, 975 F. Supp. 1061, 1067 (N.D. Ill. 1997) ("If a contract predominantly involves the sale of goods, the entire contract is subject to the UCC."); *Trans-Aire Int'l, Inc.* v. *N. Adhesive Co.*, 882 F.2d 1254, 1260–63 (7th Cir. 1989) (analyzing indemnification provision in purchase order contract under the UCC).

6

Turning to the claims alleged in Medline's complaint, Count I asserts a claim for breach of an indemnity agreement. It cites paragraphs 4 and 23 of Medline's standard terms and conditions, which provide that the seller agrees to "defend" and "indemnify" Medline against all losses, costs, damages legal fees, judgments, settlements, and other liabilities of any kind, arising out of any claim of personal injury relating to the products provided to Medline. The plain language of the terms and conditions implicate two distinct contractual duties, the duty to defend and the duty to indemnify. This distinction appears to be lost on Medline, which repeatedly conflates the two duties in its responses to Ram's motions to dismiss. As best as the court can discern, however, Medline is asserting a claim for breach of a contractual duty to defend as well as breach of a contractual duty to indemnify. It has simply mischaracterized the claims as a single "contractual indemnity" count in the complaint. Therefore the court will consider both the duty to defend and the duty to indemnify in its analysis.

In the insurance context, a duty to defend "is determined by comparing the allegations in the underlying complaint to the relevant provisions of the insurance policy." *LaGrange Mem'l Hos*p. v. *St. Paul Ins. Co.*, 740 N.E.2d 21, 26, 317 Ill. App. 3d 863, 251 Ill. Dec. 191 (2000). The duty to defend arises if the complaint's allegations fall within or potentially within the policy's coverage. *Id.* "[T]he complaint need present only a possibility of recovery, not a probability of recovery." *Id.* at 27. Therefore a claim for breach of duty to defend is ripe during the pendency of the underlying suit. *Lear*, 353 F.3d at 583; *Sears, Roebuck & Co.* v. *Zurich Ins. Co.*, 422 F.2d 587, 589 (7th Cir. 1970).

The duty to indemnify, on the other hand, "will not be defined until the adjudication of the very action which [the indemnitor] should have defended." *Outboard Marine Corp.* v.

7

*Liberty Mut. Ins. Co.*, 607 N.E.2d 1204, 1221, 154 Ill. 2d 90, 180 Ill. Dec. 691 (1992) (citation omitted); *Grinell Mut. Reinsurance Co.* v. *Reinke*, 43 F.3d 1152, 1154 (7th Cir. 1995) ("[T]he theory of recovery is not fixed until the [underlying] case ends."). Thus, the obligation to indemnify does not accrue until there has been an event that "fixes" the liability of the indemnitee. *In re Marriage of Hopwood*, 882 N.E.2d 205, 208, 378 Ill. App. 3d 746, 317 Ill. Dec. 631 (2008). Courts in this circuit "regularly say that decisions about indemnity should be postponed until the underlying liability has been established." *Lear*, 353 F.3d at 583 (citing cases).[6]

Illinois courts, however, do not apply the general rules governing insurance contracts to all contracts to defend or indemnify. In *Ervin* v. *Sears, Roebuck and Company*, 469 N.E.2d 243, 127 Ill. App. 3d 982, 82 Ill. Dec. 709 (1984), the Illinois appellate court set forth a separate approach for analyzing the duty to defend in the buyer-seller context. At issue in *Ervin* was the indemnity clause in several purchase contracts for the sale of underwear. The contracts provided that Flagg-Utica Corporation, the manufacturer, would "defend, hold harmless and indemnify" Sears, the purchaser, against any liabilities or expenses that Sears incurred as a result of personal injury claims arising from product defects. 469 N.E.2d at 884–85. After Sears was sued by a third party purchaser who claimed that he was burned when his "Sears" brand underwear caught fire, Sears tendered defense of the suit to Flagg, which Flagg refused, and then filed a third-party complaint against Flagg alleging that Flagg had breached its contractual duty to defend. *Id.* at 986. The Illinois appellate court concluded that the purchase contract between Flagg and Sears was more analogous to an indemnity agreement than an insurance policy. *Id.* at 249. It then

---

[6] The Seventh Circuit has recognized a limited exception to this general rule in situations where it is highly likely that the indemnitee will be held liable in the underlying action and will not be able to afford an award of damages. *See Bankers Trust Co.* v. *Old Republic Ins. Co.*, 959 F.2d 677, 681–82 (7th Cir. 1992).

8

rejected Sears's argument that Flagg had a duty to defend based merely on the allegations in the personal injury complaint, which is how Flagg's duty would have been determined in the insurance context. *Id.* The court held that Flagg, which was not in the business of insurance, was entitled to investigate the truth of the allegations in the complaint in order to determine the scope of its duty to defend Sears. *Id.* at 249–50. The scope of Flagg's duty ultimately depended on whether the plaintiff in the personal injury suit had been wearing underwear manufactured by Flagg, a factual issue that could not be determined simply by looking at the complaint. *Id.* at 250.

The court is not aware of any case that applies *Ervin* in analyzing whether claims for breach of the duties to defend or indemnify are ripe. The court concludes, however, that *Ervin* does not disturb the general rule that a claim for breach of the duty to defend is ripe during the pendency of the litigation. Nothing in *Ervin* indicates that the scope of the duty to defend must be determined based on evidence adduced during the course of the underlying trial. To the contrary, the Illinois appellate court noted that the key factual issue of whether Flagg had manufactured the defective underwear was not at issue in the personal injury trial and had never been decided in any of the third-party litigation. *Id.* Here, no further factual development is needed before Ram can determine the scope of its alleged duty to defend in the existing personal injury suits. Moreover, unlike in *Ervin*, there appears to be no question that Ram was the source of the mesh that gave rise to the suits – indeed Ram is named as a co-defendant. Medline's claim for breach of the duty to defend will not be dismissed as unripe.

The court likewise sees no reason to conclude that *Ervin* changes the general rule that a claim for breach of the duty to indemnify accrues only when liability has been established.

9

Although the Illinois court discussed indemnity agreements generally, the focus of its analysis was on the scope of a manufacturer's duty to defend. Resolution of Medline's claim for breach of the duty to indemnify therefore depends on the outcome of the underlying litigation. Medline does not allege, however, that it incurred any liability in the underlying personal injury suits or that it has paid a judgment or settlement.[7] Until the underlying personal injury cases are resolved, either through judgment or settlement, the court cannot conclusively determine whether Ram has breached any duty to indemnify. Therefore adjudication of the claim would be premature. *See Lear*, 353 F.3d at 583 ("A declaration that A must indemnify B if X comes to pass has an advisory quality; and if the decision would not be strictly an advisory opinion . . . it could be a mistake, because it would consume judicial time in order to produce a decision that may turn out to be irrelevant."). Medline's claim for breach of the duty to indemnify will be dismissed without prejudice.

Count II asserts a claim for common law indemnification that is not premised on the purchase orders or terms and conditions. Illinois courts will find that there is an implied contract for indemnity where (1) the parties had a preexisting relationship prior to the occurrence of the tort giving rise to liability, and (2) the party seeking indemnification is blameless and the other party is at fault. *Jinwoong, Inc.* v. *Jinwoong, Inc.*, 310 F.3d 962, 965 (7th Cir. 2002) (applying Illinois law). "The cause of action finds its roots in principles of restitution; a contract to indemnify is implied in law based on the legal obligation of the indemnitee to satisfy liability caused by actions of its indemnitor." *Dixon* v. *Chicago & N. W. Transp. Co.*, 601 N.E.2d 704, 709, 151 Ill. 2d 108, 176 Ill. Dec. 6 (1992); *see also BCS Ins. Co.* v. *Guy Carpenter & Co., Inc.*,

---

[7] Nor has Medline alleged facts sufficient to give rise to the conclusion that the considerations at issue in *Bankers Trust* are applicable here.

490 F.3d 597, 603 (7th Cir. 2007) ("The ultimate purpose of this rule is to 'shift[] the entire responsibility from the party who has been compelled to pay the plaintiff's loss to another who was actually at fault.'" (quoting *Kerschner* v. *Weiss & Co.*, 667 N.E.2d 1351, 1355, 282 Ill. App. 3d 497, 217 Ill. Dec. 775 (1996))). Accordingly, a claim for breach of an implied duty to indemnify does not arise until the plaintiff has incurred a loss through the payment of a judgment or settlement. 41 Am. Jur. 2d *Indemnity* § 26 ("[A] fundamental prerequisite to an action for equitable indemnity is an actual monetary loss through the payment of a judgment or settlement."). Medline does not allege that it has paid any judgment or settlement as a result of the underlying personal injury suits. Therefore Count II will also be dismissed as premature.

Counts III, IV, and V assert claims for breach of express warranties, breach of warranty of fitness for a particular purpose, and breach of warranty of merchantability. The UCC provides that a breach of warranty occurs when the seller delivers goods to the buyer. 810 Ill. Comp. Stat. 5/2-725(2). Medline alleges that Ram expressly and impliedly warranted that it was providing genuine Bard mesh that was free from defects and suitable for surgical implantation in the human body. Medline further alleges Ram delivered counterfeit Bard mesh that did not meet Medline's specifications, which Medline subsequently sold to third parties. All the events giving rise to Medline's breach of warranty claims have come to pass, and the claims are ripe for adjudication. Finally, Count VI asserts a claim for breach of promise to insure. A promise to insure is distinct from a promise to indemnify. *Sears, Roebuck & Co.* v. *Charwil Assocs. Ltd. P'ship*, 864 N.E.2d 869, 875, 371 Ill. App. 3d 1071, 309 Ill. Dec. 628 (2007). It is a contract that involves the promise to procure insurance and pay the applicable premiums. *Zettel* v. *Paschen Contractors, Inc.*, 427 N.E.2d 189, 191, 100 Ill. App. 3d 614, 56 Ill. Dec. 109 (1981). Thus the

promisor's obligation is discharged simply by procuring and paying for the insurance. *See W.E. O'Neil Constr. Co.* v. *Gen. Cas. Co. of Ill.*, 748 N.E.2d 667, 672, 321 Ill. App. 3d 550, 254 Ill. Dec. 949 (2001) ("When there is a promise to obtain insurance, the promisor agrees to procure, and pay for, insurance but bears no responsibility in the event of injury or damages once the insurance is obtained."). Medline alleges that, as a condition of selling products to Medline, Ram promised to add Medline to its liability insurance policies covering its sale of products. Medline further alleges that Ram failed to do so. Any rights or duties under this alleged contract to insure have accrued. Count VI will not be dismissed as unripe.

## II. Whether Count I States a Claim for Breach of the Duty to Defend

Ram argues that in the event the court does not dismiss Count I as unripe, it must nevertheless be dismissed for failure to state a claim. As discussed above, the court understands Count I to assert two claims: (1) breach of contractual duty to defend, and (2) breach of contractual duty to indemnify. Because the court will dismiss Medline's claim for breach of the duty to indemnify as unripe, its analysis of the adequacy of Medline's pleading is limited to the issue of the duty to defend.

Medline's claim for breach of the duty to defend is premised on the theory that its standard terms and conditions were part of its contract for the purchase of goods from Ram. Medline argues that Ram assented to the terms and conditions when it shipped goods according to the written purchase orders, which stated that they were "subject to" the terms and conditions. In support, Medline cites section 2-206 of the UCC, which provides that an offer to purchase goods may be accepted by shipment of conforming or non-conforming goods. *See* 810 Ill. Comp. Stat. 5/2-206(1)(b). Medline also relies on section 2-204, which governs the formation of

12

contracts and provides that "[a] contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract." *Id.* § 5/2-204(1).

Medline concedes, however, that Ram never received a copy of the terms and conditions. The language of the purchase order is confusing, and suggests that the terms and conditions needed to be executed by the seller in order to be considered part of the order. (*See* Compl. Ex. A ("This purchase order is subject to Medline's Standard Terms and Conditions. Agreement previously executed by you, our vendor."). This conclusion is supported by the seller's signature line at the bottom of the terms and conditions. Even drawing all inferences in Medline's favor, the facts alleged in the complaint do not support the inference that the terms and conditions were part of Medline's offer to purchase goods from Ram. *Cf. Compass Envtl., Inc.* v. *Polu Kai Servs., LLC*, 882 N.E.2d 1149, 1156, 379 Ill. App. 3d 549, 318 Ill. Dec. 26 (2008) (subcontractor assented to terms and conditions referred to, but not included in, in service contract when it continued to perform after receiving a copy of the terms and conditions). It follows that the terms and conditions were not part of Medline and Ram's contract for sale of surgical mesh. *See Vill. of Woodbridge* v. *Bohnen Int'l, Inc.*, 377 N.E.2d 121, 122–23, 60 Ill. App. 3d 692, 17 Ill. Dec. 931 (1978) ("A contract for the sale of goods may be made in any manner sufficient to show agreement . . . but there must be a meeting of the minds."). Medline's claim for breach of the duty to defend will be dismissed for failure to state a claim.

**III.    Whether Count III States a Claim for Breach of Express Warranty**

Ram argues that Medline's claim for breach of express warranty must be dismissed because Medline has failed to allege that Ram engaged in any affirmative conduct that could

13

amount to an express warranty.  Section 2-313 of the UCC provides that express warranties by the seller can be created by "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain."  810 Ill. Comp. Stat. 5/2-313(a).  In order to prevail on a claim for breach of express warranty, a plaintiff must plead and prove that the seller made an affirmation of fact that was part of the basis of the bargain between the parties.  *Oggi Trattoria & Caffe, Ltd.* v. *Isuzu Motors Am., Inc.*, 865 N.E.2d 334, 340, 372 Ill. App. 3d 354, 310 Ill. Dec. 10 (2007).  "Since express warranties are contractual in nature, the language of the warranty itself is what controls and dictates the obligations and rights of the various parties."  *Id.* (citation omitted).

Medline's complaint alleges that Ram made two express warranties regarding the surgical mesh that it sold to Medline.  First, it alleges that Ram expressly warranted that it was selling genuine Bard mesh.  In response to Ram's motion to dismiss, Medline argues that Ram's "acceptance" of its purchase orders constituted an express warranty by Ram that it was selling genuine Bard mesh.  The purchase orders make no reference to Bard mesh, however.  The example attached to Medline's complaint refers to the goods as "MESH MARLEX 3X6." (Compl. Ex. A.)  Medline does not argue that this description refers to Bard mesh.  Ram's complaint does not allege any other facts that give rise to the inference that Ram affirmatively promised, either orally or in writing, that it was selling genuine Bard mesh.  Therefore Medline has not stated a claim for breach of an express warranty that the goods were genuine Bard mesh.

Second, the complaint alleges that, under paragraph 7 of Medline's standard terms and conditions, Ram expressly warranted that the goods would be free from defects and would conform to Medline's specifications.  Medline does not make any reference to this allegation in

14

response to Ram's motion to dismiss. Therefore any claim that Ram breached an express warranty contained in paragraph 7 of the terms and conditions has been waived. *See Lekas* v. *Briley*, 405 F.3d 602, 614–15 (7th Cir. 2005). Even if the claim were not waived, it would be rejected because, as discussed above, the terms and conditions were not part of Medline and Ram's contract for the purchase and sale of surgical mesh. For all of these reasons, Count III will be dismissed for failure to state a claim.

**IV.     Whether Count VI States a Claim for Breach of Promise to Insure**

Finally, Ram argues that Medline has not stated a claim for breach of promise to insure because the facts do not support the conclusion that there was a definite and enforceable contract. A contract to procure insurance is analyzed under general principles of contract law. *See Burton* v. *Airborne Exp., Inc.*, 857 N.E.2d 707, 716, 367 Ill. App. 3d 1026, 306 Ill. Dec. 308 (2006). "The elements of a contract, taught like the ABC's to first-year law students, are offer, acceptance, and consideration." *Zemke* v. *City of Chicago*, 100 F.3d 511, 513 (7th Cir. 1996) (applying Illinois law). In general, "[t]o establish a contract to procure insurance, it is sufficient if one of the parties proposes to be insured and the other party agrees to insure, and the subject, the period, the amount and the rate of insurance are ascertained or understood and the premium paid if demanded." *Scarsdale Villas Assocs., Ltd.* v. *Korman Assocs. Ins. Agency*, 533 N.E.2d 81, 83, 178 Ill. App. 3d 261, 127 Ill. Dec. 463 (1988). "The essential elements can be established by implication if they are not stated explicitly." *Id.* A preliminary contract for insurance may be implied from the parties' course of conduct, correspondence or conversations. *Id.*

Medline alleges that, as a condition to becoming one of its suppliers, Ram promised to add Medline to its liability insurance policies covering the sale of products. Medline further alleges that the Bard mesh would have been included among the product sales covered by the policies. These allegations, though sparse, are sufficient to give rise to the inference that Ram entered into an enforceable contract to procure insurance for Medline. While the precise terms of the agreement to insure will need to be determined through discovery, Medline's allegation that Ram agreed to add it to its "existing" liability insurance policies shows that the amount and rate of insurance can be "ascertained" by the court or was "understood" by the parties. *See Ill. Constructors Corp.* v. *Morency & Assocs., Inc.*, 802 F. Supp. 185, 189 (N.D. Ill. 1992) (allegation that insurance broker "contracted . . . to provide [plaintiff] with insurance to protect it from any and all risks arising out of its business operation" was sufficient to state a claim for breach of an enforceable contract to insure); *see also Sears, Roebuck & Co.* v. *Fuqua Ins. Co.*, No. 89 C 9418, 1990 WL 251744, at *4 (N.D. Ill. Dec. 19, 1990) (examining contract for the sale of goods wherein seller promised that it would obtain and maintain "policies of Product Liability Insurance" naming Sears "in such amounts and in such companies and containing such other provisions which shall be satisfactory" to Sears). Ram's alleged promise to insure was also supported by consideration because it was a condition to entering into the purchase agreements with Medline. Ram's motion to dismiss Count VI will be denied.

**CONCLUSION AND ORDER**

Ram's motion to dismiss Count VI [#33] is denied. Ram's motion to dismiss Counts I through V [#19] is granted in part and denied in part. Count I is dismissed with prejudice to the extent it asserts a claim for breach of duty to defend. To the extent Count I asserts a claim for breach of duty to indemnify, it is dismissed without prejudice. Count II is dismissed without prejudice. Count III is dismissed with prejudice. Ram is directed to answer the complaint by September 24, 2012.

Dated: Aug. 30, 2012          Enter:_____
                                                    JOAN HUMPHREY LEFKOW
                                                    United States District Judge